**I SPORTS et al., Appellants,**

**v.**

**IMG WORLDWIDE, INC. et al., Appellees.**

[Cite as *I Sports v. IMG Worldwide, Inc.,* 157 Ohio App.3d 593, 2004-Ohio-3113.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 83349.

Decided June 17, 2004.

594

Aggers, Joseph & Cheverine Co., L.P.A., David F. Aggers and Vincent L. Cheverine, for appellants.

Ulmer & Berne L.L.P., Joseph A. Castrodale and Yelena Boxer, for appellees.

Sean C. Gallagher, Judge.

{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Loc.R. 11.1, the trial court records, and briefs of counsel. Appellant I Sports, a sole proprietorship owned and operated by Adam S. Lenkin,

appeals from the judgment of the Cuyahoga County Court of Common Pleas, which granted the motion to stay proceedings and to compel arbitration of appellees IMG Worldwide, Inc. ("IMG") and Julie E. Lewis. For the reasons adduced below, we reverse and remand.

{¶ 2} The following facts give rise to this appeal. According to the allegations in the complaint, IMG operates as an agent for celebrity sports figures, manufacturers of sports industry products, and sporting events, including those involved in the professional golf industry. In that capacity, IMG represents Arnold Palmer, a professional golfer, along with his companies, Arnold Palmer Enterprises, Inc. ("APE") and APE Classic, Inc. Lewis is an attorney employed by IMG.

{¶ 3} The complaint alleges that, in or about January 2001, an officer of GlaxoSmithKline Consumer Healthcare, LP ("GSK") instructed I Sports to find a celebrity athlete who would be willing to serve as a spokesperson for an annual event sponsored by GSK known as the Great American Smoke Out. Lenkin, on behalf of I Sports, contacted IMG, the sports agent for Arnold Palmer. After Lenkin was informed that Arnold Palmer would be interested, Lenkin requested that APE pay I Sports a business finder's fee for bringing the opportunity to Arnold Palmer.

{¶ 4} On August 28, 2001, a consultancy agreement between I Sports and APE was entered into, pursuant to which I Sports was to provide "consultation and advice with respect to a potential arrangement pursuant to which Arnold Palmer would participate in the 'Great American Smoke Out.'" The terms of the consultancy agreement required APE to pay a consulting fee for the services of I Sports. After a period of discussions and negotiations, GSK and APE entered into an agreement for the services of Arnold Palmer in September 2001. Thereafter, APE allegedly breached its consultancy agreement with I Sports.

{¶ 5} The complaint alleges that APE failed to pay all of the fees owing to I Sports under the consultancy agreement. Lewis sent a letter to Adam S. Lenkin, d.b.a. I Sports, on March 22, 2002, that was apparently disclosed to GSK and APE. The letter allegedly contained false statements about I Sports. Specifically, the complaint alleges that Lewis published false statements, including, among others, that I Sports performed the same services for APE as were performed for GSK and that I Sports had been compensated for the same services in full by GSK.

{¶ 6} I Sports filed this action against IMG and Lewis raising claims of defamation, interference with contractual relations, unfair and deceptive trade practices, and the unauthorized practice of law. IMG and Lewis filed a motion to stay proceedings and to compel arbitration.

{¶ 7} Under to the terms of the consultancy agreement, I Sports and APE agreed to submit any dispute arising thereunder to binding arbitration. The agreement was signed on behalf of APE by Alastair J. Johnston, chief operating officer. The agreement was also signed on behalf of I Sports by Adam S. Lenkin, owner. A review of the agreement reflects that IMG and Lewis are not mentioned in the agreement, are not signatories to the agreement, and are not parties to the agreement. Also, APE is not a defendant in this action.

{¶ 8} The trial court granted IMG and Lewis's motion to stay proceedings and to compel arbitration. I Sports appeals from the trial court's decision raising one assignment of error for our review, which provides:

{¶ 9} "The trial court committed reversible error when it abused its discretion and granted the defendants' motion to stay proceedings and refer the case to arbitration where no agreement to arbitrate disputes exists between the appellant and the appellees."

{¶ 10} An appellate court reviews a decision to stay proceedings pending arbitration under an abuse-of-discretion standard. *Coble v. Toyota of Bedford*, Cuyahoga App. No. 83089, 2004–Ohio–238, 2004 WL 99039. An abuse of discretion implies that the judge's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Despite the presumption in favor of enforcing an arbitration clause, it is generally established that a court cannot compel parties to arbitrate disputes that they have not agreed in writing to arbitrate. See, e.g., *Suttle v. DeCesare* (July 5, 2001), Cuyahoga App. No. 77753, 2001 WL 777016; *ACRS, Inc. v. Blue Cross & Blue Shield* (1998), 131 Ohio App.3d 450, 457, 722 N.E.2d 1040.

{¶ 11} The agreement in this case was between I Sports and APE. The agreement between these parties provided that any dispute arising thereunder would be submitted to arbitration. The record shows on its face that IMG and Lewis were not signatories to the agreement and, therefore, they did not agree in writing to arbitrate the action brought against them by I Sports.

{¶ 12} We acknowledge that some federal and state courts have recognized limited exceptions to the rule that a person cannot be compelled to arbitrate a dispute that he did not agree in writing to submit to arbitration. See *Jankovsky v. Grana–Morris* (Sept. 7, 2001), Miami App. No. 2000–CA–62, 2001 WL 1018337; *Thomson–CSF, S.A. v. Am. Arbitration Assn.* (C.A.2, 1995), 64 F.3d 773. In *Thomson–CSF,* the Second Circuit Court of Appeals outlined the traditional theories for enforcing arbitration clauses as to nonsignatories. These theories, which arise from common-law principles of contract and agency law, include the

following: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson–CSF*, 64 F.3d at 776.

{¶ 13} A nonsignatory may compel arbitration against a party to an arbitration agreement when the two have entered into a separate contractual arrangement that incorporates the existing arbitration clause. *Thomson–CSF*, 64 F.3d at 777. Similarly, a nonsignatory may be bound by an arbitration clause if its subsequent conduct indicates that it assumed the obligation and intends to be bound by the arbitration clause. Id. Traditional principles of agency may be applied to bind a nonsignatory to an arbitration agreement. Id. Traditional veil-piercing and alter-ego theories may also be applied to bind a nonsignatory. Under an estoppel theory, a nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a corresponding obligation to arbitrate. Id. at 778. An indirect benefit is not enough; instead, the party must directly benefit from the agreement to be bound. Id. at 779.

{¶ 14} The Second Circuit also noted that several circuits recognize an alternate estoppel theory, where arbitration may be compelled by a nonsignatory against a signatory due to the " 'close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract * * * and [the fact that] the claims were "intimately founded in and intertwined with the underlying contract obligations." ' " Id., 64 F.3d at 779, quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers* (C.A.11, 1993), 10 F.3d 753, 757. This alternate estoppel theory has been limited to situations where a nonsignatory tries to bind a signatory to arbitration, not the reverse, i.e., where a signatory tries to bind a nonsignatory. Id. The Second Circuit emphasized the importance of this distinction, stating, "[A]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so." Id. Moreover, while there is a strong policy favoring arbitration agreements, they must not be so broadly construed as to encompass claims and parties that were not intended by the original contract. *Thomson–CSF*, 64 F.3d at 776. This case presents a situation in which nonsignatories are seeking to compel arbitration against a signatory. Arbitration agreements apply to nonsignatories only in rare circumstances. *Westmoreland v. Sadoux* (C.A.5, 2002), 299 F.3d 462, 465.

{¶ 15} IMG and Lewis argue that they are permitted to compel arbitration of I Sports' claims under the theories of equitable estoppel and agency. They further assert that the dispute in this case is intertwined with the existence and terms of the consultancy agreement because I Sports is claiming that it complied with the terms of the agreement and is seeking to recover damages relating to fees it claims are owed under the terms of that agreement.

{¶ 16} Where estoppel has been extended to "intertwined claims," it is generally applied in two circumstances: (1) where a signatory must rely on the terms of the written agreement in asserting claims against a nonsignatory and (2) where the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract. *Grigson v. Creative Artists Agency, L.L.C.* (C.A.5, 2000), 210 F.3d 524, 527, quoting *MS Dealer Serv. Corp. v. Franklin* (C.A.11, 1999), 177 F.3d 942, 947. Whether equitable estoppel should be applied will turn on the facts of each case. *Grigson*, 210 F.3d at 527.

{¶ 17} Under the first circumstance for "intertwined claims," equitable estoppel binds a nonsignatory to an arbitration clause only when the signatory to the written agreement "must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Hill v. G.E. Power Sys., Inc.* (C.A.5, 2002), 282 F.3d 343. It is not sufficient that the plaintiff's claims "touch matters" concerning the agreement or that the claims are "dependent upon" the agreement. Id. at 348–349. Here, although I Sports' claims may be dependent upon establishing APE's breach of the agreement, I Sports does not need to rely on the terms of the agreement in asserting its claims.

{¶ 18} Nevertheless, IMG and Lewis argue that the defamation claims are dependent upon the contractual duties created under the agreement. The defamation claims in this case arise from a letter written by Lewis on March 22, 2002. In the letter, Lewis asserts that I Sports also entered into a consultancy arrangement with GSK for the same services offered to APE and that I Sports had already been paid in full by GSK. Lewis further states, among other accusations, that Lenkin was "aware of [his] ethical and contractual duties and obligations." I Sports alleges in its complaint that the inferred ethical and contractual duties prohibiting him from representing both APE and GSK never existed. While this particular statement may touch upon the agreement, we do not find that the defamation claims brought by I Sports arise from, or are so intertwined with, the agreement to justify the imposition of arbitration under an equitable estoppel theory.

{¶ 19} Indeed, I Sports' claims for defamation, interference with contractual relations, unfair and deceptive trade practices, and engaging in the unauthorized practice of law do not arise out of the consultancy agreement. Rather, these claims relate to alleged actions by IMG and Lewis that affected the business relationship and obligations created by the agreement between I Sports and APE. This distinction is important. I Sports does not need to rely upon the terms within the agreement to assert its claims, but, instead, its claims are dependent upon the business relationship created by the agreement. As a result, we find that I Sports' claims are not intertwined with the agreement.

{¶ 20} The second circumstance under which equitable estoppel is applied arises when the signatory to the contract alleges "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hill*, 282 F.3d at 348. Here, there are no allegations that IMG and Lewis were involved in concerted misconduct with APE.

{¶ 21} IMG and Lewis rely on several cases in support of their argument that I Sports should be equitably estopped from repudiating the arbitration clause. These cases are distinguishable from this case. Several of the cases relied upon by appellees involved claims that were phrased in tort but which arose out of a contract between the parties. See *H.S. Gregory v. Electro–Mechanical Corp.* (C.A.11, 1996), 83 F.3d 382 (all claims arose under the contract and were dependant upon the defendant's failure to fulfill its perceived contractual obligations in connection with the sale of stock); *Sumber Co. Pte. Ltd. v. Diversey Corp.* (Feb. 28, 1996), Hamilton App. No. C–950360, 1996 WL 365885 (tortious-interference claim rested entirely upon breach of license agreement and was coterminous with defendant's ongoing refusal to honor the agreement in its capacity as a successor). These cases did not involve nonsignatories seeking to enforce an arbitration provision.

{¶ 22} *MS Dealer Serv. Corp. v. Franklin* (C.A.11, 1999), 177 F.3d 942, involved an allegation that a signatory had worked in concert with the nonsignatories in an alleged fraudulent scheme. *Hughes Masonry Co. v. Greater Clark Cty. School Bldg. Corp.* (C.A.7, 1981), 659 F.2d 836, involved claims relating to a nonsignatory's alleged breach of contractual obligations assigned to it. Such circumstances are not present in this case.

{¶ 23} In *Gerig v. Kahn*, 95 Ohio St.3d 478, 769 N.E.2d 381, 2002–Ohio–2581, the Ohio Supreme Court held that a signatory to a contract could enforce an arbitration provision against a nonsignatory who sought the benefit of rights under the contract. In this case, IMG and Lewis are not attempting to enforce any rights under the contract between I Sports and APE. The cases relied upon by IMG and Lewis do not provide any reason for this court to compel arbitration between parties who have not agreed in writing to subject the matter to arbitration.

{¶ 24} As stated by the Second Circuit in *Thomson–CSF* :

"As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. * * *

{¶ 25} " [T]hese estoppel cases all involve claims which are integrally related to the contract containing the arbitration clause. The same cannot be said of the

case at hand. As discussed above, E & S's claims against Thomson amount to the assertion that Thomson purchased Rediffusion in order to eliminate it as a competitor. While a cause of action may lie against Thomson for such alleged predatory business practices, the violation can hardly be characterized as arising out of or being integrally related to the Working Agreement between E & S and Rediffusion. Thus, the analogy to this line of estoppel cases again must fail." *Thomson–CSF,* 64 F.3d at 779–780.

{¶ 26} We also reject IMG and Lewis's position that I Sports is attempting to avoid a contractual arbitration clause by casting its complaint in tort. As stated in *Jankovsky,* supra:

"[T]he children contend that their action is not based on the contract, but is based on the tort of interference with an expectancy of inheritance or gift.

{¶ 27} " * * *

{¶ 28} "Under established law, parties cannot avoid arbitration by casting contract claims as torts. By the same token, a tort claim does not become 'contractual' simply because an element of proof may relate to a contract. As we said the children in this case are not suing Jones for breach of contractual duties. * * * [T]heir claims are not based on breach of contract and are not subject to the contractual arbitration provisions."

{¶ 29} In this case, I Sports is not asserting that IMG and Lewis breached contractual obligations and has not recast its claims in tort. Rather, the claims arise from alleged tortious conduct and are reflected in the proper form.

{¶ 30} IMG and Lewis also claim that they are agents of APE as to the subject of the dispute and, therefore, may invoke the arbitration clause. IMG and Lewis refer to various allegations in the complaint reflecting a relationship between appellees and APE, including the allegation that IMG and APE jointly negotiated the agreement on APE's behalf.

{¶ 31} It has been recognized that the agency exception may be invoked when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." *MS Dealer Serv. Corp.,* 177 F.3d at 947, citing *Boyd v. Homes of Legend, Inc.* (M.D.Ala.1997), 981 F.Supp. 1423, 1432; and *Arnold v. Arnold Corp.* (C.A.6, 1990), 920 F.2d 1269, 1281.

{¶ 32} In *Arnold,* the plaintiff's original complaint alleged that a fraud was perpetrated by the Arnold Corporation through its "officers, directors and agents" with respect to a stock purchase agreement. *Arnold,* 920 F.2d 1269. The plaintiff then attempted to avoid an arbitration clause by naming these nonsignatory defendants in their individual capacities, rather than as officers and

agents of the corporation. Id. The Sixth Circuit agreed with the district court's finding that "if appellant 'can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in his complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified.'" Id. at 1281.

{¶ 33} The case before us does not involve an evisceration of the underlying arbitration agreement. I Sports has not recast the parties or claims in this action in an attempt to avoid the arbitration provision.

{¶ 34} In *Scher v. Bear Stearns & Co., Inc.* (S.D.N.Y.1989), 723 F.Supp. 211, relied upon by appellees, the court found that the plain language of the arbitration clause in dispute mandated the arbitration of all claims arising out of the customer agreement, including those against a disclosed agent of the institutional party. Unlike the *Scher* case, the claims brought against IMG and Lewis do not arise from the agreement and do not relate to their actions as purported agents of APE under the agreement.

{¶ 35} It also has been recognized that an agent or employee of a signatory cannot invoke an arbitration clause unless the parties intended to bring them into the arbitral tent. See *Westmoreland v. Sadoux* (C.A.5, 2002), 299 F.3d 462, 466. The agreement in this case was executed between I Sports and APE, and there is no evidence that the parties intended the arbitration clause to apply to the claims that have been brought in this action. Accordingly, IMG and Lewis may not invoke an agency theory to invoke the arbitration clause.

{¶ 36} Having found that none of the exceptions apply to the general rule that a court cannot compel parties to arbitrate disputes that they have not agreed in writing to arbitrate, we conclude that the trial court abused its discretion in granting the motion to stay proceedings and to compel arbitration of appellees IMG and Lewis.

{¶ 37} The first assignment of error is sustained.

Judgment reversed<br>and cause remanded.

PATRICIA ANN BLACKMON, P.J., concurs.

ANTHONY O. CALABRESE JR., J., dissents.

ANTHONY O. CALABRESE JR., Judge, dissenting.

{¶ 38} I respectfully dissent. Based on the facts presented, I would have affirmed the trial court's decision.

{¶ 39} Appellants' claims fall within the scope of the arbitration clause contained in the consultancy agreement between APE and appellant. The

appellees can compel arbitration because of the agency relationship between appellees and APE. In addition, I find I Sports' claims to be sufficiently intertwined with the agreement to justify the imposition of arbitration under an equitable estoppel theory. I would have upheld the lower court's granting of appellees' motion to stay proceedings and to compel arbitration.