JOURNAL ENTRY and OPINION
{¶ 1} Appellant Commonwealth Land Title Insurance Company ("Commonwealth Land Title") appeals the trial court's denial of its motion to compel arbitration of appellees Rodney and Tracey Simons' class action and assigns the following error for our review:
 {¶ 2} "I. The trial court erred by denying defendant-appellant Commonwealth Land Title Insurance Company's motion to compel arbitration pursuant to the usual and customary arbitration provision in the subject insurance policy."
 {¶ 3} Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.
 {¶ 4} Commonwealth Land Title issued a title insurance policy to Andrea Desberg for property that she and her husband purchased from Rodney and Tracey Simon. The title insurance policy is purchased primarily for the benefit of the buyer; however, the buyer and the seller customarily pay for the policy jointly, which was the case here. Rodney Simon, seller, testified the premium for the title insurance policy was $1,674.
 {¶ 5} The Simons brought a class action suit against Commonwealth Land Title for overpayment on this policy and claimed they are entitled to a 40% discount on the premium. R.C. 3937.03 requires that title insurance companies file with the Ohio Department of Insurance Commission (ODIC) a rate schedule setting forth the premium rates they will charge for title insurance. Commonwealth Land Title's rate schedule states that purchasers of title insurance are entitled to a 40% discount on their premiums when title insurance has been purchased within the previous ten years of the closing sale of the property. The Simons claimed they qualified for this discount and are entitled to the 40% discount. The rationale for the 40% discount rate or reissue rate is that Commonwealth Land Title is underwriting less risk when the sale is within ten years of the prior purchase.
 {¶ 6} In response to the Simons' class action, Commonwealth Land Title moved for an order compelling arbitration. Commonwealth Land Title relied on section 14 of the policy of title insurance, which provided in pertinent part as follows:
"Unless prohibited by applicable law, either the Company or the insuredmay demand arbitration pursuant to Title Insurance Arbitration Rules ofthe American Arbitration Association. Arbitrable matters may include, butare not limited to, any controversy or claim between the company and theinsured arising out of or relating to this policy, any service of theCompany in connection with its issuance or the breach of a policyprovision."
 {¶ 7} The Simons opposed the motion to compel arbitration on the grounds that they did not agree to the arbitration clause and were not bound by it. On March 15, 2004, the trial court conducted an evidentiary hearing pursuant to Commonwealth Land Title's motion to compel arbitration.
 {¶ 8} Timothy Warren, the escrow agent for the sale of the Simons' property, testified at the hearing. He stated he was a vice-president of Continental Title Agency, which was an agent for Commonwealth Land Title. He explained in detail the role of title insurance in the sale of a home. He stated that, although title insurance is bought for the benefit of the buyer, the buyer and seller customarily pay for the policy jointly. He further testified that certain transactions are entitled to a reissue credit whenever the seller is covered by an owner's title insurance policy and the prior policy has been outstanding for less than ten years. He explained the credit is given because the title company is underwriting less risk. The premium for the current policy is then discounted by the reissue credit.
 {¶ 9} Warren further testified that his company, Continental Title, does not provide a title insurance policy to the home buyer until after the sale is closed. Typically, the policy is not provided for sixty to ninety days thereafter. Finally, Warren testified neither he nor his company told the Simons about the 40% discount.[1]
 {¶ 10} Rodney Simon testified he paid one-half of $1,674 for the title insurance policy. He stated he did not receive the title insurance policy. Further, he did not enter into any agreement to arbitrate any claims he had against Commonwealth.[2]
 {¶ 11} On April 1, 2004, after reviewing evidence at the hearing, the trial court denied Commonwealth's motion to compel based on our decision in Henderson v. Lawyers Title Ins.[3] The trial court stated:
"Like the plaintiff buyers in Henderson, the plaintiff Simon did nothave the opportunity to review the policy prior to closing and thereforedid not know the terms of the policy. Without a meeting of the minds, theparties cannot have formed a valid contract."
 {¶ 12} The trial court also based its decision on our holding in Robinson v. Cent. Reserve Life Ins.,[4] stating:
"[p]arties are not bound by an arbitration provision in a healthinsurance policy where the premium payments were made prior to receivinga complete copy of the policy's terms and conditions."
 {¶ 13} Commonwealth Land Title now appeals.
 {¶ 14} In its sole assigned error, Commonwealth Land Title argues the trial court erred in denying its motion to compel arbitration. We disagree.
 {¶ 15} In determining whether the trial court properly denied or granted a motion to stay the proceedings and compel arbitration, the standard of review is whether the order constituted an abuse of discretion.[5] The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.[6]
 {¶ 16} Further, it is well established that Ohio and federal courts encourage arbitration to settle disputes.[7] However, an arbitration agreement will not be enforced if the parties did not agree to the clause.[8] A party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.[9]
 {¶ 17} In the instant case, it is undisputed the Simons, as sellers, did not receive a copy of the title insurance policy. Indeed, Commonwealth Land Title admits, through its agent Warren, that the policy is normally given to the buyers even though the seller pays one-half the premium. It is evident there was no agreement by the Simons to be bound by an arbitration clause in a policy they never received.
 {¶ 18} Additionally, at the evidentiary hearing, the following exchange took place during the cross-examination of Timothy Warren, Commonwealth Land Title's sole witness:
 {¶ 19} "Q. And we're talking about a 1995 transaction which resultedin the issuance of an Owner's Policy of Title Insurance to the Simons,correct?
 {¶ 20} "A. That's correct.
 {¶ 21} "Q. And there is no question as you sit here in court todaythat the 1999 transaction qualified for a reissue credit as that definedin the rate filing of Commonwealth, correct?
 {¶ 22} "A. It could have, yes.
 {¶ 23} "Q. Well, you see the prior policy of Title Insurance,correct?
 {¶ 24} "A. I see it, yes.
 {¶ 25} "Q. It was in the name of Simons, correct?
 {¶ 26} "A. As you sit here today, there is no question that thattransaction qualified, correct?
 {¶ 27} "A. Yes.
 {¶ 28} "Q. That discount, however, was not provided in connection withthe transaction, correct?
 {¶ 29} "A. That's correct.
 {¶ 30} "Q. Now, at the time that you handled the closing of thistransaction on behalf of Commonwealth, did you ask the Simons for a copyof the prior insurance policy?
 {¶ 31} "A. No, we did not.
 {¶ 32} "Q. Did you inform the Simons of how they might be eligible forsomething called a reissue credit?
 {¶ 33} "A. No, we did not.
 {¶ 34} "Q. Did you make it a business practice of informing yourcustomers when they might be eligible for a reissue credit?
 {¶ 35} "A. No."[10]
 {¶ 36} Commonwealth Land Title argues the trial court abused its discretion by not applying Gerig v. Kahn.[11] Gerig v. Kahn stands for the proposition that a non-signatory can be bound to provisions of an agreement when the non-signatory seeks a declaratory judgment as to its rights and obligations under the agreement itself. The Simons are not claiming or seeking a declaration of their rights under the policy but rather are seeking to declare and enforce their rights under Commonwealth Land Title's rate schedule which is filed with ODIC pursuant to R.C.3937.03. It is the cost of the premiums that are at issue and their rights to be so informed of the discount and to receive the discount.
 {¶ 37} In Henderson v. Lawyers Title,[12] a case similar to this one, we held that a seller had standing to sue for the 40% discount or "reissue rate" regardless of the fact that the seller derives no benefit from the title insurance. We reasoned that both the buyer and seller each pay one-half of the premium for the purchase of the title insurance. This being the case, the seller has standing to sue.
 {¶ 38} We also concluded in that case that the arbitration clause did not apply to the sellers or buyers. Here, the sellers are seeking to qualify for the 40% discount and credited or reimbursed for any overpayment. They are not seeking to enforce a clause under the policy nor seeking coverage under the policy.
 {¶ 39} We distinguished Gerig v. Kahn in I Sports v. IMG.[13]
Although I Sports v. IMG is factually different from our case, it does recognize the limits of Gerig v. Kahn. We stated in I Sports v. IMG that arbitration shall not be compelled between parties who have not agreed in writing to "subject the matter to arbitration."[14]
 {¶ 40} Consequently, we hold the trial court properly followedHenderson v. Lawyers Title. Additionally, we conclude Gerig v. Kahn is limited to its holding that non-signatories are bound to an arbitration clause contained in an agreement they seek to enforce.
The matter the Simons seek to enforce is Commonwealth Land Title's premium rate schedule filed with ODIC, which contains no arbitration clause.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., Concur; Cooney, J., Concurs in Judgment only.
[1] Tr. at 47.
[2] Tr. at 67.
[3] (Feb. 19, 2004), Cuyahoga App. No. 82654.
[4] (Dec. 11, 2003), Cuyahoga App. No. 82981.
[5] Strasser v. Fortney Weygandt, Inc. (Dec. 20, 2001), Cuyahoga App. No. 79621. See also, Reynolds v. Lapos Constr., Inc. (May 30, 2001), Lorain App. No. 01 CA007780; Harsco Corp. v. Crane Carrier Co. (1997),122 Ohio App.3d 406, 410.
[6] Nakoff v. Fairview General Hospital (1996), 75 Ohio St.3d 254,256-257.
[7] ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 501, 1998-Ohio-612;Kelm v. Kelm, 68 Ohio St.3d 26, 27, 1993-Ohio-56; Southland Corp. v.Keating (1984), 465 U.S. 1, 10, 79 L. Ed.2d 1, 104 S.Ct. 852; R.C. 2711.01.
[8] Harmon v. Philip Morris Inc. (1997), 120 Ohio App.3d 187, 189, quoting ATT Technologies, Inc. v. Communications Workers of America
(1986), 475 U.S. 643, 89 L.Ed.2d 648, 106 S.Ct. 1415.
[9] Ervin v. American Funding Corp. (1993), 89 Ohio App.3d 519.
[10] Tr. at 46-47.
[11] (2002) 95 Ohio St.3d 478.
[12] (Feb. 19, 2004), Cuyahoga App. No. 82654.
[13] I Sports v. IMG Worldwide, Inc., 157 Ohio App.3d 5932004-Ohio-3631.
[14] Id at 23.