NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0407n.06

No. 24-3929

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Aug 21, 2025
KELLY L. STEPHENS, Clerk

ORG HOLDINGS LTD.,

        Plaintiff-Appellee,

v.

BMW FINANCIAL SERVICES NA, LLC,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

---

Before: BATCHELDER, CLAY, and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge.** Defendant BMW Financial Services NA, LLC ("BMWFS") appeals the district court's denial of its motion to compel arbitration of Plaintiff's unjust enrichment claim alleging that BMWFS pocketed the excess proceeds of an insurance payout. The dispute stems from a vehicle lease agreement between Plaintiff and BMW of Westlake, a car dealership, to which BMWFS is a non-signatory. For the reasons set forth below, we affirm the district court's judgment.

## I. BACKGROUND

On August 31, 2021, Plaintiff ORG Holdings entered into a Vehicle Lease Agreement ("the Lease" or "Lease Agreement") with non-party BMW of Westlake, a car dealership, to lease a 2022 BMW M5 vehicle for a term of thirty-six months. Another non-party, Financial Services Vehicle Trust ("FSVT"), worked to facilitate asset-backed securitization of BMW leases such as the one signed by Plaintiff. Defendant BMW Financial Services NA, LLC ("Defendant" or "BMWFS")

was the servicer tasked with administering BMW leases on behalf of FSVT.  In a separate Servicing

Agreement between BMWFS and FSVT, it was agreed that:

> [BMWFS] shall service, administer and collect under the Leases in accordance with the terms of this Agreement and shall have full power and authority, acting alone and subject only to the specific requirements and prohibitions of this Agreement, to do any and all things in connection with such servicing, administering, and collecting that it may reasonably deem necessary or desirable.

Servicing Agreement, R. 3-2, Page ID #66.

In section two of Plaintiff's Lease Agreement, the text identified Plaintiff as the lessee (by

the terms "I" or "me") and BMW of Westlake as the lessor (by the term "you").  Lease Agreement,

R. 3-3, Page ID #90.  Additionally, the Lease provided that the term "you" would also include the

"Lessor's assignee." *Id.*  The Lease then specified that the role of "Lessor's assignee" would be

allocated to either BMWFS or, if the relevant box was checked, to FSVT. *Id.*  The full language

of section two is displayed as follows:

> This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above.  Unless otherwise specified, "I," "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee.  "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☑ to Financial Services Vehicle Trust.  BMW FS will administer this Lease on behalf of itself or any assignee.  The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

*Id.*  The checked box designated the role of "Lessor's assignee" to FSVT in connection with

Plaintiff's Lease, as opposed to BMWFS.

The Lease also contained an arbitration clause, stating that "[e]ither you or I may choose

to have any dispute between us decided by arbitration and not in a court or by jury trial." *Id.* at

Page ID #95.  Once again, "I" referred to Plaintiff, and "you" referred to the lessor, BMW of

Westlake, and because the relevant box was checked, to FSVT as "Lessor's assignee."  Plaintiff

interpreted this language as permitting either Plaintiff, BMW of Westlake, or FSVT to compel arbitration.

On October 21, 2023, Plaintiff was involved in a serious car accident that destroyed the leased vehicle. Plaintiff's insurance company, Cincinnati Insurance, paid $98,516.70 to cover the value of the vehicle, which was a total loss. The amount remaining due under the Lease was $81,781.04. This resulted in a surplus amount of $16,735.66 in insurance proceeds that went to Defendant BMWFS, as FSVT's servicer. Although Plaintiff's Lease addressed the possible scenario where insurance proceeds from a loss were less than the amount owed under the Lease, it did not address the converse scenario where the proceeds *exceeded* the amount owed. Lease Agreement, R. 3-3, Page ID #93 ("[Plaintiff] will be obligated to pay you . . . any and all amounts due and owing needed to satisfy my obligations under this Lease . . . [including] any amounts deducted from the actual cash value of the Vehicle by the insurance carrier."). That said, Defendant BMWFS publicly represented in its SEC filings that "[i]f the insurance loss proceeds exceed the user-lessee's Lease obligations, the excess is refunded to the user-lessee."[1] Compl., R. 1-1, Page ID #14.

On March 19, 2024, Plaintiff filed a class action complaint in the Cuyahoga County, Ohio, Court of Common Pleas, asserting a single cause of action for unjust enrichment against Defendant BMWFS for pocketing the excess insurance proceeds. Defendant timely removed the case to the United States District Court for the Northern District of Ohio and also moved to compel arbitration pursuant to the Lease Agreement. In its motion, Defendant argued that FSVT "explicitly appointed" BMWFS as its agent under the separate Servicing Agreement to handle a variety of

---

[1] SEC Registration Statement Nos. 333-260903 and 333-260903-04, https://perma.cc/LD4P-6PV8.

matters under the Lease, including "insurance proceeds." Def.'s Mot. to Compel Arbitration, R. 3, Page ID #40. Plaintiff opposed the motion, arguing that BMWFS could not enforce the arbitration clause as a non-signatory to the Lease Agreement between Plaintiff, BMW of Westlake, and FSVT (as lessor's assignee), especially since the Lease's express language disclaimed BMWFS from the role of lessor's assignee.

On October 15, 2024, the district court denied Defendant's motion to compel arbitration. The district court observed that "[b]y default, the lease defines BMW FS as the assignee, entitled to invoke the arbitration clause. However, because of [the] checked box, the assignee is not BMW FS but [FSVT]." Op. & Order, R. 23-1, Page ID #265. The district court reasoned that this detail evinced the parties' clear intent to deny arbitration powers to BMWFS, which precluded it from compelling arbitration as an agent or affiliate of FSVT, or as a third-party beneficiary to the contract. This appeal followed.

## II. DISCUSSION

### Analysis

We review *de novo* a district court's denial of a motion to compel arbitration. *Schwebke v. United Wholesale Mortg., LLC*, 96 F.4th 971, 973 (6th Cir. 2024). The Federal Arbitration Act's ("FAA") "principal purpose" is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). "[W]e do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "Because the federal policy favoring arbitration applies 'only when both parties have consented to and are bound by the arbitration

clause,' courts have refused to apply it to arbitration claims by or against nonparties." *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021) (quoting *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014)). Thus, when reviewing motions to compel arbitration, "we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Waffle House*, 534 U.S. at 294. The Supreme Court has instructed federal courts to apply state contract law when determining the "scope" of arbitration agreements, "including the question of who is bound by them." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

Plaintiff argues that Defendant BMWFS cannot compel arbitration because it was not a party or signatory to the Lease Agreement between Plaintiff and BMW of Westlake, and was further disclaimed from enforcing the arbitration clause through the Lease's express terms. BMWFS presents four main arguments in response, arguing that it may compel arbitration either: (1) as a third-party beneficiary of the Lease, (2) as an affiliate of FSVT, (3) as an agent of FSVT, or (4) through the doctrine of equitable estoppel. We remain unpersuaded by these arguments, since allowing BMWFS to enforce the arbitration clause would go against the express terms of the Lease, and thus contradict the parties' intent.

### 1. Third Party Beneficiary Theory

State contract law determines whether a non-signatory such as BMWFS may compel arbitration. *See Carlisle*, 556 U.S. at 631. Under Ohio law, "a nonparty to a contract generally may not enforce a party's contractual duties unless the contract makes the nonparty an intended (not just an incidental) third-party beneficiary." *AtriCure, Inc.*, 12 F.4th at 526 (citing *Hill v. Sonitrol of Sw. Ohio, Inc.*, 36 Ohio St. 3d 36, 521 N.E.2d 780, 784–86 (Ohio 1988)). "Conversely, 'a party who fortuitously receives some benefit from the performance of a contractual promise is

an incidental, and not an intended, third-party beneficiary.'" *Sutherland v. Gaylor*, No. 20AP-257, 2021 WL 2343001, at *5 (Ohio Ct. App. June 8, 2021) (quoting *Prince v. Kent State Univ.*, No. 11AP-493, 2012 WL 831013, at *4 (Ohio Ct. App. Mar. 13, 2012)). "This neutral state-law rule generally prevents nonparties from enforcing arbitration clauses unless they are intended third-party beneficiaries." *AtriCure, Inc.*, 12 F.4th at 526 (citing *JJ Connor Co., Inc. v. Reginella Constr. Co.*, No. 13 MA 75, 2014 WL 4401952, at *3–4 (Ohio Ct. App. Sept. 2, 2014)). To qualify as an intended third-party beneficiary, "there must be evidence that the contract was intended to directly benefit that third party." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 856 (6th Cir. 2020) (quoting *Huff v. FirstEnergy Corp.*, 130 Ohio St. 3d 196, 957 N.E.2d 3, 7 (Ohio 2011)).

BMWFS attempts to argue that it may enforce the arbitration clause as a third-party beneficiary to the Lease Agreement between Plaintiff and BMW of Westlake, primarily because of a single sentence providing that "BMW FS will administer this Lease on behalf of itself or any assignee [including FSVT]." Lease Agreement, R. 3-3, Page ID #90. BMWFS thus contends that this express power to administer the Lease also extends to enforcement of the arbitration clause against Plaintiff.

But the Lease Agreement does not evince that intent. To the contrary, it states that "[e]ither you [(Lessor or Lessor's Assignee)] or I [(Lessee)] may choose to have any dispute between us decided by arbitration and not in a court or by jury trial." Lease Agreement, R. 3-3, Page ID #95. "Lessor" refers to BMW of Westlake. "Lessor's Assignee" refers to FSVT, since BMW of Westlake made that specific designation by checking the blank box. *Id.* at Page ID #90 ("'Assignee' refers to [BMWFS] or, if this box is checked ☑ to [FSVT]."). "Lessee," of course, refers to Plaintiff. The end result is that Plaintiff did not agree to arbitrate "any dispute" with BMWFS, *id.* at Page ID #95, and hence the federal presumption favoring arbitration need not apply

in this case. *AtriCure, Inc.*, 12 F.4th at 525 (noting that the federal policy favoring arbitration only applies when both parties have consented to the arbitration clause).

The Ninth Circuit addressed a similar issue in *Ngo v. BMW of North America, LLC* when BMW, a non-party to the lease agreement between the plaintiff and Peter Pan Motors, the car dealership, tried to compel arbitration as a third-party beneficiary to the lease. 23 F.4th 942 (9th Cir. 2022). The Ninth Circuit explained that vehicle purchase agreements differ from "agreements to draft wills or to manage trusts or mutual funds—arrangements inherently formed with third parties in mind," because they are "drafted with the primary purpose of securing benefits for the contracting parties themselves." *Id.* at 947. In other words, "the purchaser seeks to buy a car, and the dealership and assignees seek to profit by selling and financing the car. Third parties are not purposeful beneficiaries of such an undertaking." *Id.* The Ninth Circuit observed that the lease agreement in *Ngo* only allowed three parties to compel arbitration: (1) the plaintiff, (2) the dealership, and (3) the dealership's assignee. *Id.* at 948. Nowhere was BMW granted this right, even though BMW was otherwise involved in the transaction (as the manufacturer) and not just "some random third party." *Id.* The Ninth Circuit further reasoned that "BMW's relative proximity to the contract confirm[ed] that the parties easily could have indicated that the contract was intended to benefit BMW—but did not do so." *Id.* For all these reasons, the Ninth Circuit concluded that BMW was not a third-party beneficiary to the vehicle purchase agreement. *See id.*

The same is true here. Under the Lease Agreement, the dealership named two possible assignees: BMWFS and FSVT. BMWFS's being expressly named in the Lease shows its proximity to the transaction and the dealership's intent for BMWFS to function as its assignee *unless* the "box [was] checked" making FSVT the assignee instead. Lease Agreement, R. 3-3, Page ID #90. Because the box here was checked, we know that FSVT was intended to be the

dealership's assignee in the Lease Agreement with Plaintiff, and that BMWFS was purposefully disclaimed from that role. "The compelling inference from this arrangement is that the parties knew how to give enforcement powers to non-signatories when they wished to do so but gave none to [BMWFS]." *See Ngo*, 23 F.4th at 948.

Still, BMWFS cites its broad powers to administer the Lease as evidence of its alleged right to compel arbitration. Lease Agreement, R. 3-3, Page ID #90 (granting BMWFS the power to "administer [the] Lease on behalf of itself or any assignee [FSVT]"). But BMWFS's power to administer the Lease does not override the parties' clear intent. It may be true that the aforementioned language could *plausibly* vest BMWFS with arbitration powers *if* the Lease had not expressly foreclosed this possibility by selecting FSVT to act as lessor's assignee instead. *Id.* ("'Assignee' refers to [BMWFS] or, if this box is checked ☑ to [FSVT]."). In decoding this purposeful choice, however, we return to the key issue: if BMW of Westlake had intended for BMWFS to enforce the Lease's arbitration clause against Plaintiff or otherwise act as its assignee, it presumably would have said so, instead of granting that privilege to FSVT. Thus, it stands to reason that BMWFS's power to administer the Lease does not, by itself, give rise to a third-party beneficiary relationship sufficient to compel arbitration of Plaintiff's claim. *See Cook*, 961 F.3d at 857 ("[M]any companies enter into contracts where they utilize representatives, agents or employees of one of the contracting parties for the benefit of the other, but this does not make the representatives intended third-party beneficiaries to the contract."). Rather, BMWFS's power to administer the Lease on behalf of itself or FSVT is merely an incidental benefit of the Lease Agreement.

### 2. Affiliate Theory

Relatedly, BMWFS attempts to argue that it may compel arbitration as an affiliate of FSVT, to the extent that BMWFS "is charged to 'administer' the Lease on behalf of the 'assignee' of the Lease, FSVT." Appellant Br., ECF No. 19, 22. This argument also fails because, for the reasons described above, BMWFS has not shown that it was a party or intended third-party beneficiary under the Lease, *see AtriCure*, 12 F.4th at 526, and Ohio law is clear that "only a party . . . or an intended third-party beneficiary has enforceable rights" under a contract. *Sutherland*, 2021 WL 2343001, at \*5.

### 3. Agency Theory

Alternatively, BMWFS argues that it may compel arbitration as an agent of FSVT, because the Servicing Agreement between BMWFS and FSVT grants BMWFS the broad power to "service, administer and collect under the Leases in accordance with the terms of [the Servicing Agreement] and . . . to do any and all things in connection with such servicing, administering and collecting that [BMWFS] may reasonably deem necessary or desirable." Servicing Agreement, R. 3-2, Page ID #66. The Agreement also appoints BMWFS as an "agent" of FSVT "[i]n order to facilitate the servicing of the Leases." *Id.* at Page ID #75. Among other duties, BMWFS notes that it is tasked with handling insurance proceeds on FSVT's behalf, including the excess insurance proceeds in the instant matter. BMWFS further notes that "Ohio intermediate courts . . . hold that agents may enforce arbitration clauses in contracts signed by their principals when the other party has sued them for actions taken within the scope of their agency." Appellant Br., ECF No. 19, 18 (quoting *AtriCure*, 12 F.4th at 532).

BMWFS is correct that a non-party agent may sometimes compel arbitration on the principal's behalf. *Navarro v. Proctor & Gamble*, 515 F. Supp. 3d 718, 743 (S.D. Ohio 2021)

(noting that Ohio law permits both agents and third-party beneficiaries to enforce a contract "even though they were not part[ies] to the contract"). But as a threshold matter, BMWFS's challenged conduct—pocketing Plaintiff's excess insurance proceeds—seemingly would not fall within the scope of its general agency duties for FSVT with respect to the instant Lease, which is silent on the handling of excess insurance proceeds. Further, BMWFS was otherwise obligated to refund the excess insurance proceeds to Plaintiff pursuant to its own filings with the SEC. *See* Compl., R. 1-1, Page ID #14 (specifying that "[i]f the insurance loss proceeds exceed the user-lessee's Lease obligations, the excess is refunded to the user-lessee").

Even assuming that BMWFS's alleged pocketing of the excess insurance proceeds was covered by the Servicing Agreement or the instant Lease, the fact remains that agency does not always confer arbitration rights, especially when it would contradict the parties' express terms. In *Smith v. Javitch Block, L.L.C*, the Ohio Court of Appeals held that the limiting language found in a cardholder agreement defeated agency principles. No. 110154, 2021 WL 4340805 (Ohio Ct. App. Sept. 23, 2021). The plaintiff, Khadija Smith, opened a J.C. Penney credit card through Synchrony Bank and signed an agreement containing an arbitration clause. *Id.* at *1. The provision stated that if "either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you . . . and us, our affiliates, agents, and/or J.C. Penney Corporation if it relates to your account." *Id.* (noting that "you and us" referred respectively to Smith and Synchrony Bank). *Id.* Synchrony Bank later assigned Smith's account to a third party, Portfolio Recovery Associates ("PRA"), who sued Smith to collect the unpaid balance on her credit card account. *Id.* PRA's collection action was eventually dropped, and Smith filed a complaint against PRA's legal counsel, Javitch Block, L.L.C. ("Javitch"), alleging state law violations in connection with the former lawsuit. *Id.* at *2.

Javitch then tried to compel arbitration of Smith's claims "as an agent of PRA," since PRA had previously been assigned an interest in Smith's account, but the trial court denied its motion. *Id.* at *2. The Ohio Court of Appeals affirmed the trial court's decision, noting that the cardholder agreement expressly limited arbitration powers to "you" (Smith) or "we" (PRA, through Synchrony Bank's assignment of Smith's account). *Id.* at *4. Because of "the express language of [the] arbitration clause," the court held that Javitch could not compel arbitration of Smith's claims as an agent of PRA. *Id.* at *6.

Likewise, BMWFS cannot compel arbitration as an agent of FSVT. The Lease's arbitration clause explicitly provides that "[e]ither you [(BMW of Westlake or lessor's assignee)] or I [(Plaintiff)] may choose to have any dispute between us decided by arbitration and not in a court or by jury trial." Lease Agreement, R. 3-3, Page ID #95. Because the role of lessor's assignee was assigned to FSVT by way of the checked box, the parties apparently did not intend to allow both FSVT and BMWFS to arbitrate. This is reinforced by the fact that BMWFS was previously the Lease's default choice for "lessor's assignee" and was deliberately disclaimed in this case. *Id.* at Page ID #90 ("'Assignee' refers to [BMWFS] or, if this box is checked ☑ to [FSVT]."). Certainly, the parties did not have to check the box; they could have left it blank, thereby keeping BMWFS in its default role of lessor's assignee. But they did not. Viewing the Lease in its current form, we conclude that the parties' express designation of FSVT as the lessor's assignee outweighs BMWFS's agency argument. *See Javitch Block, L.L.C.*, 2021 WL 4340805, at *6.

### 4. Equitable Estoppel Theory

BMWFS also argues that because Plaintiff's claims "arise entirely from the Lease," Plaintiff should be equitably estopped from avoiding arbitration. *See* Appellant Br., ECF No. 19, 30. BMWFS forfeited this argument by raising it for the first time in its reply brief before the

district court. "[W]e have found issues to be [forfeited] when they are raised for the first time in motions requesting reconsideration or in replies to responses." *Grider Drugs, LLC v. Express Scripts, Inc.*, 500 F. App'x. 402, 405 (6th Cir. 2012) (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)). BMWFS admits that "the word 'estoppel' does not appear in [its] Arbitration Motion," but insists that "the legal concept unquestionably permeates BMWFS's briefing of the core questions of BMWFS's right to compel arbitration" in that motion. Appellant Br., ECF No. 19, 32. No matter the truth of this statement, vague or "skeletal" references to an argument do not preserve it for appeal. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

In any event, BMWFS's argument fails. The doctrine of equitable estoppel provides that a signatory "may be estopped from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the underlying contract." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003). Ohio law dictates that "estoppel applies 'when the signatory to the written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Harrison v. Gen. Motors, LLC*, 651 F. Supp. 3d 878, 889 (E.D. Mich. 2023) (quoting *I Sports v. IMG Worldwide, Inc.*, 157 Ohio App. 3d 593, 813 N.E.2d 4, 9 (Ohio Ct. App. 2004)).

In an alternate scenario, the theory of equitable estoppel may apply "where the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more signatories to the contract."[2] *I Sports*, 813 N.E.2d at 8 (citing *Grigson v. Creative Artists*

---

[2] The second scenario of equitable estoppel is inapplicable in this case because Plaintiff has not implicated the conduct of BMW of Westlake or any other entity in connection with their unjust enrichment claim.

*Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)).  "Whether equitable estoppel should be applied will turn on the facts of each case."  *Id.* at 8–9 (citing *Grigson*, 210 F.3d at 527).

In *I Sports*, a dispute between a consulting company and sports agency, an Ohio court determined that the agency's theory of equitable estoppel did not allow the agency to compel arbitration of the plaintiff's various tort claims, because the claims were not sufficiently intertwined with the parties' consultancy agreement.  *Id.* at 9. The Ohio court reasoned that although the plaintiff's claims, such as defamation and tortious interference, "relate[d] to alleged actions by [the agency] that affected the business relationship and obligations created by the [parties'] agreement," the claims were merely "dependent upon the business relationship *created by* the agreement," *id.* (emphasis added), not the actual "terms within the agreement."  *Id.*  In other words, the Ohio court found that a party's claims may "'touch matters' concerning [an] agreement" without implicating equitable estoppel, as long as the party does not seek to rely on its terms.  *Id.* (citation omitted).

In the present case, Plaintiff raises the sole claim of unjust enrichment against BMWFS for pocketing $16,735.66 in excess proceeds from an insurance payout stemming from the destruction of the leased vehicle.  Although the Lease covers Plaintiff's general insurance obligations with respect to the vehicle, it is "silent on the situation where the insurance proceeds [from vehicle damage] exceed the amount due under the lease."  Compl., R. 1-1, Page ID #13.  Plaintiff asserts that these excess proceeds relate to "an entirely separate agreement," namely, the insurance policy Plaintiff purchased with Cincinnati Insurance Company (the insurer named in the Lease).  Appellee Br., ECF No. 23, 31.  Because Plaintiff states that BMWFS kept those excess proceeds, BMWFS's alleged conduct stems from "the business relationship created by the [Lease]" and not its actual terms.  *I Sports*, 813 N.E.2d at 9.

BMWFS erroneously suggests that equitable estoppel applies because "but for the Lease of the Vehicle, [Plaintiff] would have no claim whatsoever to the insurance proceeds," Appellant Br., ECF No. 19, 30, but in the context of equitable estoppel, a "but for" relationship does not suffice. *See I Sports*, 813 N.E.2d at 9 (noting that a party's claims are not intertwined simply because they are "dependent upon" an agreement). Therefore, while Plaintiff's claim "touch[es] matters concerning the [Lease]," it does not depend upon its terms. *Id.*

### III. CONCLUSION

For the reasons set forth above, we affirm the district court's order in full.