**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KIM NGO,
*Plaintiff-Appellant*,

v.

BMW OF NORTH AMERICA, LLC;
BMW AKTIENGESELLSCHAFT; DOES,
1 THROUGH 10, INCLUSIVE,
*Defendants-Appellees.*

No. 20-56027

D.C. No.
2:20-cv-06197-
MWF-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted November 16, 2021
Pasadena, California

Filed January 12, 2022

Before: Kim McLane Wardlaw, Barrington D. Parker,[*]
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Parker

---

[*] The Honorable Barrington D. Parker, United States Circuit Judge for the Second Circuit, sitting by designation.

## SUMMARY[**]

### Arbitration

The panel reversed the district court's order compelling arbitration in an action brought by Kim Ngo, a purchaser of a BMW, alleging breach of warranty.

Because the dealership financed Ngo's purchase, they entered into a purchase agreement, which contained an arbitration clause. As a result of alleged defects with the car, Ngo sued BMW of North America, LLC ("BMW"), the manufacturer, which was not a signatory to the purchase agreement. BMW moved to compel arbitration. The district court granted the motion to compel arbitration, finding BMW to be a third-party beneficiary.

The panel applied California law to determine whether a non-signatory to an agreement containing an arbitration clause may compel arbitration. Under California law, a non-signatory is a third-party beneficiary only to a contract made expressly for its benefit.

The panel applied the three-part test in *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (2019). First, a third party must in fact benefit from the contract. Here any benefit that BMW might receive from the clause was peripheral and indirect because it was predicated on the decisions of others to arbitrate. Second, the contracting parties must have had a "motivating purpose" of providing a benefit to the third party. The panel held that BMW failed to demonstrate the

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

requisite "motivating purpose" where the vehicle purchase agreement in question was drafted with the primary purpose of securing benefits for the contracting parties themselves, and third parties were not the purposeful beneficiaries of such an undertaking. Third, permitting the third party to enforce the contract must be consistent with the "objectives of the contract" and the "reasonable expectations of the contracting parties." The panel held that nothing in the contract here evinced any intention that the arbitration clause should apply to BMW. BMW's relative proximity to the contract confirmed that the parties easily could have indicated that the contract was intended to benefit BMW – but they did not do so.

The panel rejected BMW's contention that equitable estoppel allowed it to compel arbitration. California permits non-signatories to invoke arbitration agreements under the doctrine of equitable estoppel under two circumstances. The second basis for equitable estoppel did not apply because Ngo did not allege any "concerted misconduct" between the other signatory (the dealership) and either of the parties. The first basis requires that Ngo either rely on the terms of the purchase agreement or make claims that were intimately founded in and intertwined with it. The panel held that BMW was mistaken that, under the Song-Beverley and the Magnuson-Moss Warranty Acts, Ngo's claims were inextricably intertwined with terms of the purchase agreement. The panel rejected BMW's argument that equitable estoppel was broadened by the recent decision in *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020). The panel therefore declined to affirm on the ground of equitable estoppel.

**COUNSEL**

Jennifer D. Bennett (argued), Gupta Wessler PLLC, San Francisco, California; Matthew W.H. Wessler, Gupta Wesler PLLC, Cambridge, Massachusetts.; Payam Shahian, Strategic Legal Practices, Los Angeles, California; for Plaintiff-Appellant.

Thomas M. Peterson, Morgan Lewis & Bockius LLP, San Francisco, California; Karyn L. Ihara, Morgan Lewis & Bockius LLP, Los Angeles, California; for Defendants-Appellees.

**OPINION**

PARKER, Circuit Judge:

In 2012, Kim Ngo bought a new BMW 535i sedan from Peter Pan Motors, Inc, a car dealership. Because the dealership financed Ngo's purchase, they entered into a purchase agreement which contained an arbitration clause. As a result of alleged defects with the car, Ngo sued BMW of North America, LLC ("BMW"), the manufacturer, which was not a signatory to the purchase agreement. The question presented to us is whether BMW may compel arbitration under the purchase agreement between Ngo and the dealership. We conclude that it cannot, and we reverse the district court's order compelling arbitration.

I.

The purchase agreement listed Ngo as the "Buyer," the dealership as the "Creditor-Seller," and BMW Bank of North America (the financing company to which the

purchase agreement referred) as the "Assignee." The arbitration clause provided:

> Either you or we may choose to have any dispute between us decided by arbitration and not in court or by jury trial . . . . Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action . . . .

The purchase agreement also stated that it had no effect on any "warranties covering the vehicle that the vehicle manufacturer may provide."

Ngo had a variety of issues with her car. Allegedly, the engine shook violently on start-up, the back-up camera was defective, the spark plugs were faulty, the sunroof was broken, the brake rotors were warped, and the radiator hose leaked. Although Ngo took her car to authorized BMW facilities for a series of repairs, the problems persisted.

BMW expressly warrants its vehicles "against defects in materials or workmanship." BMW's warranty offers purchasers the option of non-binding mediation through the Better Business Bureau, but it also makes clear that

dissatisfied consumers may sue in court. Under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), a manufacturer that is unable to repair a new vehicle to conform to its warranty must promptly replace or repurchase the vehicle. Cal. Civ. Code § 1793.2(d)(2). The federal Magnuson-Moss Warranty Act ("Magnuson-Moss Act") imposes similar requirements. *See* 15 U.S.C. § 2304(a)(4). When BMW refused to replace or repurchase the car, Ngo brought the present action, alleging violations of the Song-Beverly and the Magnuson-Moss Acts.

Ngo's complaint named only BMW as a defendant. Her first, second, third, and fourth claims assert breaches of an express warranty. Her fifth claim alleges breach of the implied warranty of merchantability. Her sixth claim, based on the Magnuson-Moss Act, will "stand or fall with [the] express and implied warranty claims under state law." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008).

BMW moved to compel arbitration, invoking the arbitration clause in the purchase agreement between Ngo and the dealership, arguing that it was a third-party beneficiary of the arbitration clause. Alternatively, BMW invoked equitable estoppel, arguing that Ngo's claims were "intimately founded in and intertwined with" the purchase agreement.

The district court granted the motion to compel arbitration, finding BMW to be a third-party beneficiary, but not addressing equitable estoppel. The court held that BMW was a third-party beneficiary because:

> *First*, the arbitration provision here specifically calls for the arbitration of any claim dealing with the "purchase or condition

of the vehicle" including a claim involving "third parties who do not sign this contract."

* * *

*Second*, if there is any doubt as to whether this "third party" clause should be read to include BMW NA, BMW Bank, a subsidiary of BMW NA, is an assignee of the arbitration provision and the Purchase Agreement. In other words, BMW NA is not some random third party, but is affiliated with the assignee of the agreement itself.

* * *

*Third*, BMW NA was responsible for the warranty on the Vehicle, and the "vehicle manufacturer" (which is BMW NA) is explicitly mentioned in the Purchase Agreement.

The court then dismissed the complaint and Ngo appealed.

## II.

State law determines whether a non-signatory to an agreement containing an arbitration clause may compel arbitration. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631–32 (2009). Under California law, a non-signatory is a third-party beneficiary only to a contract "made expressly for [its] benefit." Cal. Civ. Code § 1559. BMW was obligated to prove that "express provisions of the contract," considered in light of the "relevant circumstances," show that (1) "the third party would in fact benefit from the

contract;" (2) "a motivating purpose of the contracting parties was to provide a benefit to the third party;" and (3) permitting the third party to enforce the contract "is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 830 (Cal. 2019). BMW fails this test.

First*,* a third party must "in fact benefit from the contract." *Id.* But a third party that "only incidentally or remotely benefit[s]" from a contract does not meet this standard. *Lucas v. Hamm*, 56 Cal. 2d 583, 590 (1961); *see also Levy v. Only Cremations for Pets, Inc*., 271 Cal. Rptr. 3d 250, 257–58 (Cal. Ct. App. 2020). Here, the arbitration clause expressly states that only three parties—Ngo, the dealership, and the assignee—may compel arbitration. The contract defines "you" as Ngo and "we" as the dealership and its assignee. The clause specifies that "[e]ither *you or we* may choose to have any dispute between us decided by arbitration and not in court or by jury trial." (emphasis added). The clause also states that "[a]ny claim or dispute . . . between you and us or our employees, agents, successors, or assigns . . . which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) . . . shall, at *your or our* election, be resolved by neutral, binding arbitration and not by a court action . . ." (emphasis added).

The district court found, and BMW argues on appeal, relying on *Hajibekyan v. BMW of North America, LLC*, 839 F. App'x 187 (9th Cir. 2021), that when an agreement provides that it covers claims involving particular parties, that agreement has been made expressly for the benefit of

those parties. The memorandum disposition in *Hajibekyan*, however, is not binding precedent and, in any event, does not help BMW. There, the arbitration clause defined arbitrable disputes as those between "me and you or your employees, officers, directors, *affiliates*, successors, or assigns," and defined "you" and "your" to include the assignee of the contract. *Id.* at 188 (emphasis added). BMW was an affiliate of the assignee in *Hajibekyan*. *Id*. Here, arbitrable disputes do not include those involving BMW Bank of North America's assignees and affiliates, only those involving the *dealership's* assignees.

That BMW could, at some point down the line, receive some benefit if the arbitration clause were read to extend to the manufacturer is of no moment: incidental or secondary benefit is not sufficient. *See Lucas*, 56 Cal. 2d at 590. The clause is pellucid that only three parties may compel arbitration, none of which is BMW. Language limiting the right to compel arbitration to a specific buyer and a specific dealership (and its assignees) means that extraneous third parties may not compel arbitration. *See Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1128 (9th Cir. 2013) (finding similar language to evince the buyer's intent to arbitrate with the expressly named parties and no one else); *see also Safley v. BMW of N. Am., LLC*, No. 20-cv-00366-BAS-MDD*,* 2021 WL 409722, at \*5–6 (S.D. Cal. Feb. 5, 2021); *Qi Ling Guan v. BMW of N. Am., LLC,* No. 20-cv-05025-MMC, 2021 WL 148202, at \*2 (N.D. Cal. Jan. 15, 2021); *Manuwal v. BMW of N. Am., LLC*, No. CV 20-2331 DSF, 484 F. Supp. 3d 862, 868 (C.D. Cal. 2020). Any benefit that BMW might receive from the clause is peripheral and indirect because it is predicated on the decisions of others to arbitrate. BMW therefore fails to meet the first prong of the *Goonewardene* test.

Second, the contracting parties must have had a "motivating purpose" of providing a benefit to the third party. *Goonewardene,* 6 Cal. 5th at 830. The phrase "motivating purpose" was intended to "clarify that the contracting parties must have a motivating purpose to benefit the third party, and not simply knowledge that a benefit to the third party may follow from the contract." *Id.* BMW has failed to demonstrate this requisite "motivating purpose."

Our cases illustrate why this is so. In *Lucas*, persons to be named in a will were third-party beneficiaries to a contract between a will's draftsman and a testator. *See* 56 Cal. 2d at 590. In *Northstar Financial Advisors, Inc. v. Schwab Investments*, shareholders in a mutual fund were third-party beneficiaries to a contract between a trust and an investment advisor for the management of that mutual fund. 779 F.3d 1036, 1064 (9th Cir. 2015) (noting that the purpose of the contract was "to manage and operate the Fund in accordance with the fundamental investment objectives that the shareholders had adopted"). And in *Spinks v. Equity Residential Briarwood Apartments*, an employee was the third-party beneficiary to a contract to provide housing for that employee between an employer and a landlord. 171 Cal. App. 4th 1004, 1031 (Cal. Ct. App. 2009).

Unlike agreements to draft wills or to manage trusts or mutual funds—arrangements inherently formed with third parties in mind—the vehicle purchase agreement in question was drafted with the primary purpose of securing benefits for the contracting parties themselves. In such an agreement, the purchaser seeks to buy a car, and the dealership and assignees seek to profit by selling and financing the car. Third parties are not purposeful beneficiaries of such an undertaking.

The text of the arbitration clause supports this conclusion. It provides that claims and disputes "which arise[] out of or relate[] to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) . . . shall, at *your or our* election, be resolved by neutral, binding arbitration." (emphasis added). Though the language allows for arbitration of certain claims concerning third parties, it still gives only Ngo, the dealership, and the assignee the power to compel arbitration. Nothing in the clause or, for that matter, in the purchase agreement reflects any intention to benefit BMW by allowing it to take advantage of the arbitration provision.

Third, permitting the third party to enforce the contract must be consistent with the "objectives of the contract" and the "reasonable expectations of the contracting parties." *Goonewardene,* 6 Cal. 5th at 830. To make this determination, we focus on "the language of the contract and all of the relevant circumstances under which the contract was entered into" to determine if "third party enforcement will effectuate the contracting parties' performance objectives, namely those objectives of the *enterprise* embodied in the contract, read in light of surrounding circumstances." *Id*. at 830–31 (cleaned up).

Nothing in the contract here evinces any intention that the arbitration clause should apply to BMW. The arbitration clause's enforcement provisions are limited to the dealership, the assignee, and Ngo. The compelling inference from this arrangement is that the parties knew how to give enforcement powers to non-signatories when they wished to do so but gave none to BMW. Indeed, the fact that the purchase agreement provides that it "does not affect any

warranties covering the vehicle that the vehicle manufacturer may provide," is a potent indication that the parties knew how to deal with claims against the manufacturer.

Although the arbitration clause may have extended to claims regarding the purchase of the vehicle, it does not follow that additional *parties* can enforce the arbitration clause. In so concluding, the district court "confuse[d] the nature of the claims covered by the arbitration clause with the question of who can compel arbitration." *White v. Sunoco, Inc.*, 870 F.3d 257, 267 (3d Cir. 2017).

Nor is our conclusion disturbed by the fact that BMW was neither a stranger to the transaction nor "some random third party," as the district court put it. To the contrary, BMW's relative proximity to the contract confirms that the parties easily could have indicated that the contract was intended to benefit BMW—but did not do so. *See Murphy v. Directv, Inc.*, 724 F.3d at 1218, 1234 (9th Cir. 2013) (noting that a signatory that named an entity other than the one seeking arbitration as a third-party beneficiary "clearly knew how to provide for a third-party beneficiary if it wished to do so").

## III.

We also reject BMW's contention that equitable estoppel allows it to compel arbitration. California law permits non-signatories to invoke arbitration agreements under the doctrine of equitable estoppel only in limited circumstances. *Henson v. United States Dist. of N. Cal.*, 869 F.3d 1052, 1060 (9th Cir. 2017). The two circumstances are:

(1) when a signatory must rely on the terms of the written agreement in asserting its claims

against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and

(2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Kramer*, 705 F.3d at 1128–29 (cleaned up). Equitable estoppel thus prevents a plaintiff from having it "both ways" by seeking to hold a non-signatory liable for obligations "imposed by [an] agreement," while at the same time "repudiating the arbitration clause of that very agreement." *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 220, 231 (Cal. Ct. App. 2009).

Ngo did not allege any "concerted misconduct" between the other signatory (the dealership) and either of the parties, so the second basis for equitable estoppel does not apply. *Kramer*, 705 F.3d at 1128. That leaves only the first basis, which requires that Ngo either "rely on the terms of" the purchase agreement or make claims that are "intimately founded in and intertwined with" it. *Id*.

BMW argues that the "inextricably bound up" test is satisfied for three reasons. First, "the express and implied warranties provided by BMW NA are the additional terms of the purchase agreement that contains the arbitration proviso." Second, BMW argues that Ngo's claims "depend on, arise out of, and are inextricably intertwined with the purchase agreement." Third, BMW suggests that "the purchase agreement furnishes plaintiff's standing to sue so

the arbitration clause is critical to her rights." We are not persuaded.

As an initial matter, under California law, warranties from a manufacturer that is not a party to a sales contract are "not part of [the] contract of sale." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 514 (Cal. Ct. App. 1963); *see also Greenman v. Yuba Power Prods., Inc.*, 59 Cal. 2d 57, 63–64 (Cal. 1963). Instead, the express and implied warranties arise "independently of a contract of sale." *Greenman*, 59 Cal. 2d at 60–61; *Cavanaugh*, 217 Cal. App. 2d at 514; *see also Frost v. LG Elecs Mobilecomm USA, Inc.* No. D062920, 2013 WL 5409906, at *6 (Cal. Ct. App. Sept. 27, 2013) (a manufacturer's warranties are "independent of the purchase agreement"). Moreover, the purchase agreement expressly states that it does not disturb any warranties provided by BMW.

BMW is mistaken that, under the Song-Beverley and the Magnuson-Moss Warranty Acts, Ngo's claims are inextricably intertwined with terms of the purchase agreement. To be sure, Ngo must show that she owned a BMW, but ownership does not entail an intention to enforce any obligations of the purchase agreement on BMW. BMW was not a party to the agreement and its obligations to Ngo arose independently of her agreement with the dealership.

BMW argues that if Ngo had not signed the purchase agreement with the dealership, she would not have been able to purchase her car; if she had not purchased her car, BMW would have issued no warranties; and if BMW had issued no warranties, Ngo could not bring statutory claims. But this "attenuated chain of reasoning" has been rejected by California courts. *Nemore v. Renovate Am., Inc.* No. B294459, 2019 WL 6167410, at *6 (Cal. Ct. App.

Nov. 20, 2019). And we rejected similar arguments in *Kramer*. *See* 705 F.3d at 1131. Like Ngo's purchase agreement, the contracts in *Kramer* "expressly differentiate[d] dealer warranties from manufacturer warranties" and disclaimed any effect on the manufacturer's warranties. *Id.* We held that warranty claims against the manufacturer "arise[] independently from the Purchase Agreements, rather than intimately relying on them." *Id.*

Lastly, BMW's standing argument fails. It is the retail sale—the fact that Ngo bought a BMW—not the purchase agreement, that gives a plaintiff standing to bring claims under the Song-Beverly Act. *See Islas v. Ford Motor Co.*, No. EDCV 18-2221-GW(SPx), 2019 WL 10855294, at \*5 (C.D. Cal. July 29, 2019) (the Act's definition of the buyers covered "does not contain any reference to a contract or any contract-based rights" at all). The contract with the dealership only "proves . . . the existence" of the retail sale. *Murphy*, 724 F.3d at 1231. Because Ngo's standing to bring these claims against BMW does not derive from the purchase agreement, BMW cannot establish that Ngo's claims are "inextricably tied up" with the purchase agreement. For these reasons BMW fails to meet the *Kramer* standard.

BMW alternatively argues that it need not meet the *Kramer* standard because equitable estoppel under California law was broadened by a recent decision: *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020). We disagree.

The plaintiffs in *Felisilda* purchased a used 2011 Dodge Grand Caravan from the Elk Grove Dodge dealership and signed a purchase agreement containing an arbitration provision that was virtually identical to the one Ngo signed. *See id*. After discovering "serious defects" with the car, the Felisildas sued both the dealership and the manufacturer. *Id.*

at 491. *The dealership* moved to compel arbitration. *Id.* at 489. After the manufacturer filed a notice of non-opposition, the trial court compelled arbitration. *Id.* at 491. The Felisildas then dismissed the dealership and the district court ordered it to arbitrate with the manufacturer alone. *Id.* at 499. The California Court of Appeal affirmed. *Id.*

It makes a critical difference that the Felisildas, unlike Ngo, sued the dealership in addition to the manufacturer. In *Felisilda*, it was the dealership—a signatory to the purchase agreement—that moved to compel arbitration rather than the non-signatory manufacturer. *See id.* at 489 ("Relying on the retail installment sales contract . . . signed by the Felisildas, Elk Grove Dodge moved to compel arbitration."). Furthermore, the Felisildas dismissed the dealership only *after* the court granted the motion to compel arbitration. Accordingly, *Felisilda* does not address the situation we are confronted with here, where the non-signatory manufacturer attempted to compel arbitration on its own. We therefore decline to affirm on the ground of equitable estoppel.

IV.

For these reasons, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.