Filed 10/19/23  Kermani v. Hyundai Motor America CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SIAMAK KERMANI, | B316652 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV24017) |
| v. | |
| HYUNDAI MOTOR AMERICA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maren Nelson, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Brittany B. Sutton, Eric Y. Kizirian, Karyn L. Ihara and Michael K. Grimaldi for Defendant and Appellant.

Wirtz Law, Richard M. Wirtz, Ommar Chavez; O'Connor Law Group, Mark O'Connor; Niddrie Addams Fuller Singh and Rupa G. Singh for Plaintiff and Respondent.

## INTRODUCTION

Siamek Kermani (Kermani), an electric car owner, filed a putative class action complaint against his car's manufacturer, Hyundai Motor America (Hyundai). Kermani's claims relate to alleged battery defects in vehicles Hyundai manufactured. Hyundai is the sole named defendant in Kermani's lawsuit. Kermani did not name the selling dealer, Keyes Hyundai (Dealer), as a codefendant.

Hyundai moved to compel Kermani's claims to arbitration. Hyundai sought to enforce an arbitration provision contained in the sale contract that Kermani and the selling dealer signed when Kermani bought the car. Hyundai was not a party to the sale contract, nor did Hyundai sign the sale contract. The trial court denied the motion.

Hyundai appeals the trial court's order denying its motion. Hyundai asserts the trial court erred by (1) finding Hyundai did not satisfy its statutory burden to allege the existence of an agreement to arbitrate; (2) deciding the threshold issue of the arbitration provision's enforceability instead of compelling the issue to an arbitrator to decide; and (3) finding Hyundai, a nonsignatory, did not have standing to enforce the arbitration agreement under either the equitable estoppel doctrine or as a third-party beneficiary to the sale contract. We disagree with Hyundai's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Sale Contract and the Arbitration Provision*

Kermani purchased his car from the Dealer. He financed his purchase through the Dealer and signed an agreement entitled, "Retail Installment Sale Contract—Simple Finance Charge (With Arbitration Provision)" (Sale

2

Contract). Kermani and the Dealer are the only signatories to the Sale Contract.

The Sale Contract identified Kermani as "Buyer" and "you," and identified the Dealer as "Seller-Creditor," "we," and "us."

The Sale Contract memorialized Kermani's payment obligations to the Dealer and outlined the Dealer's remedies against Kermani should he fail to timely pay.

The Sale Contract contained an arbitration provision. The provision stated, in boldface: "EITHER *YOU* OR *WE* MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN *US* DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL." (Italics added.)

The arbitration provision continued: "Any claim or dispute . . . (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between *you and us* or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at *your* or *our* election, be resolved by neutral, binding arbitration and not by a court action." (Italics added.)

The Sale Contract specified, "[a]ny arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration." The Sale Contract provided "[f]ederal law and California law apply to this contract."

The Sale Contract stated, in part: "WARRANTIES SELLER DISCLAIMS [¶] If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract,

3

the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.  [¶]  This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide."

Hyundai was not a party to the Sale Contract.  The Sale Contract also does not refer to Hyundai other than to the make of the car as a "*Hyundai Kona*" and to the name of the Dealer, "Keyes *Hyundai*."[1]  (Italics added.)

### B.    *The Complaint*

Kermani filed a putative class action against Hyundai, not the Dealer.  His complaint alleged four causes of action for: (1) breach of express warranty under the Song-Beverly Act (Civ. Code, § 1790, et seq.); (2) breach of implied warranty under the Song-Beverly Act; (3) violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200); and (4) breach of the covenant of good faith and fair dealing.

The complaint attached the "2019 Owner's Handbook & Warranty Information" (the Express Warranty).  The Express Warranty identified Hyundai as the "Warrantor."

All of Kermani's causes of action incorporate the following allegations: Before Kermani purchased his car, Hyundai "knew of the battery system defect through internal sources, testing, and consumer complaints."  Kermani alleged "[d]espite this knowledge, [Hyundai] failed to disclose and actively concealed the battery system defect from [Kermani] and potential Class Members. . . .  Instead, [Hyundai] continued to market to potential Class Members to purchase the Class Vehicles without informing potential Class

---

[1]    Hyundai concedes Keyes Hyundai is a separate corporate entity from Hyundai.

Members of the underlying, and extremely dangerous, manufacturing defect present in the Class Vehicles' battery systems." Kermani alleged the defects caused him and potential Class Members harm and they "suffered actual damages."

### C. *The Motion to Compel Arbitration Proceedings*

Hyundai filed a motion to compel arbitration pursuant to the arbitration provision in the Sale Contract. Hyundai argued, as a threshold matter, the arbitration provision contained a delegation clause requiring an arbitrator, not the court, to decide arbitrability disputes. Hyundai also asserted it had standing to enforce the arbitration agreement as a nonsignatory because: (1) the plain language of the contract mentioned third parties; (2) Hyundai was a third-party beneficiary of the Sale Contract; and (3) the equitable estoppel doctrine barred Kermani from arguing that non-signatories could not enforce the arbitration provision.

In his opposition, Kermani argued the court should deny the motion because Hyundai failed to meet its statutory burden to prove the existence of an arbitration agreement. Kermani argued Hyundai failed to properly authenticate the purported Sale Contract because the contract was attached to its attorney's declaration and the attorney lacked the personal knowledge to authenticate it. Kermani also filed evidentiary objections to the declaration based on hearsay and lack of foundation.

Kermani next opposed Hyundai's motion, arguing: (1) the court, not an arbitrator, had authority to determine arbitrability disputes; and (2) Hyundai lacked standing to enforce the arbitration provision as a nonsignatory.

In reply, Hyundai argued applicable law did not require a moving party to authenticate an arbitration agreement to meet its initial statutory

5

burden.  Hyundai noted "if there are lingering authenticity concerns, [Hyundai] can and will obtain a declaration from the dealership further authenticating the [Sale Contract] should the Court require it."

After a hearing on the motion to compel arbitration, the trial court issued its order denying the motion.  The court agreed with Kermani that Hyundai failed to properly authenticate the arbitration agreement and sustained Kermani's evidentiary objections.  The court concluded the motion could be denied on that basis alone.

The court nevertheless reached the merits of the motion.  On the threshold issue of the delegation clause, the court concluded it had jurisdiction to decide arbitrability regarding whether Hyundai had standing to enforce the arbitration provision.  The court concluded Hyundai, as a nonsignatory, lacked standing to enforce the provision.

Hyundai timely appealed.

## DISCUSSION

### A.    *Standard of Review and Governing Law*

The issues on appeal present pure questions of law and are therefore subject to de novo review.  (*Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1505; *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["[w]here . . . the evidence is not in conflict, we review the trial court's denial of arbitration de novo"].)

### B.    *Existence of An Agreement to Arbitrate*

Hyundai contends the trial court erred when it found Hyundai did not meet its statutory burden to prove the existence of an arbitration agreement.  We disagree.

6

### 1. *Governing Principles*

The parties generally agree that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) governs arbitration under the Sale Contract.  However, Kermani contends the California Arbitration Act's (CAA) (Code Civ. Proc., § 1280 et seq.) procedural rules apply in state court proceedings to determine the existence or validity of an arbitration agreement.  Kermani is correct. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 410 (*Rosenthal*); *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 356–357.)

Code of Civil Procedure section 1281.2 authorizes petitions to compel arbitration, providing in part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." (§ 1281.2.)

In *Rosenthal, supra,* 14 Cal.4th at page 413, our Supreme Court explained the moving party's initial evidentiary burden in alleging the existence of an agreement to arbitrate.  "[W]hen a petition to compel arbitration is filed and accompanied by prima facie *evidence* of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable.  Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of *proving its existence by a preponderance of the evidence.*" (*Id.,* italics added.)  Our Supreme Court reiterated this evidentiary burden in

7

*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).

Before a writing may be considered evidence, it must be authenticated. (Evid. Code, § 1401, subd. (a); *Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 525–526.) To authenticate a writing, the proponent of the document must introduce "evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is" or establish "such facts by any other means provided by law." (Evid. Code, § 1400.) A declaration based on information and belief does not constitute admissible evidence. (See *Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201, 204 ["An affidavit based on 'information and belief' is hearsay and must be disregarded [citations]. . . . Such allegations on 'information and belief' furnish '"no proof of the facts stated"'].)

### 2. *Evidentiary Burden*

Here, Hyundai's outside counsel attached the Sale Contract to her declaration in support of Hyundai's motion. The attorney declared that she had "personal knowledge of the following facts, *except for those based on information and belief."* (Italics added.) In her declaration, she attached what she purported to be a "true and correct copy" of the Sale Contract. She did not provide any information to establish she had personal knowledge to authenticate the Sale Contract. Because Hyundai did not authenticate the Sale Contract, it failed to meet the evidentiary burden necessary to satisfy the statutory requisite of proving the existence of an agreement to arbitrate. (See *Rosenthal, supra,* 14 Cal.4th at p. 413; *Engalla, supra,* 15 Cal.4th at p. 972.)

Hyundai relies on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 (*Condee*) to argue a moving party need not comply with the evidentiary rules of authentication to meet its initial statutory burden. As the trial court noted, two appellate opinions have called *Condee* into doubt, stating "[t]o the extent *Condee* conflicts with *Rosenthal,* our Supreme Court's decision is controlling." (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219, fn. 8; *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 [same].) *Rosenthal* and *Engalla* held the moving party must prove the existence of an arbitration agreement by a preponderance of the evidence. As discussed, Hyundai failed to provide any admissible evidence to prove the existence of the agreement to arbitrate.

While the trial court's order may be affirmed on this basis alone, we nevertheless proceed to address the remaining issues raised in Hyundai's appeal.

C. *The Delegation Clause*

Hyundai contends the trial court lacked jurisdiction to consider whether Hyundai had standing, as a nonsignatory, to enforce the Sale Contract's arbitration provision. Hyundai asserts the Sale Contract's inclusion of a delegation clause required an arbitrator, not the court, to decide any disputes regarding the arbitrability of Kermani's claims. (See *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 774 [contract clauses that delegate questions of arbitrability to an arbitrator are routinely referred to as "delegation clauses"].) We disagree with Hyundai's contention and conclude the court had jurisdiction to decide the question of Hyundai's standing to enforce the arbitration provision.

9

"'It is well settled in both commercial and labor cases that whether parties have agreed to "submi[t] a particular dispute to arbitration" is typically an "issue for judicial determination.""' (*Kramer v. Toyota Motor Corp.* (9th Cir. 2013) 705 F.3d 1122, 1127 (*Kramer*).) "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.) "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute [citations] . . . the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that matter.*" (*Id.* at p. 943.)

Courts have concluded the trial court, not an arbitrator, has jurisdiction to decide arbitrability disputes where a nonsignatory car manufacturer moved to compel a signatory car purchaser's claims to arbitration. (*Kramer, supra,* 705 F.3d at p. 1127; *Safley v. BMW of North America, LLC* (S.D. Cal. Feb. 5, 2021, No. 20-cv-00366-BAS-MDD) 2021 WL 409722, at *3 (*Safley*).) Those cases involved nearly identical delegation clauses as those involved here. (*Ibid.*)

In *Kramer*, 705 F.3d 1122, the court concluded the delegation clause lacked "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories." (*Id.* at p. 1127.) The court reasoned, "[t]he parties to this litigation did not agree to arbitrate arbitrability; Plaintiffs only agreed to arbitrate arbitrability—or any other dispute—with the Dealerships because the arbitration clause is limited to claims between 'you and us'—i.e. Plaintiffs and the Dealerships. In the absence of a disagreement between Plaintiffs and the Dealerships, the agreement to arbitrate arbitrability does not apply. Therefore, a disagreement between

10

Plaintiffs and [car manufacturer] 'is simply not within the scope of the arbitration agreement.'" (*Id*. at p. 1128; see also *Safley, supra,* 2021 WL 409722 at *4 [concluding based on the same delegation clause that the court, not an arbitrator, had jurisdiction to decide arbitrability disputes between signatory car buyer and nonsignatory manufacturer].)

Here, the Sale Contract contained an identical delegation clause as that in *Kramer* and *Safley*. The clause's plain language confirms that Kermani agreed to delegate arbitrability disputes between Kermani and the Dealer, not disputes between Kermani and Hyundai. The clause specified it covered arbitrability disputes "between *you* [Kermani] and *us* [Dealer]." (Italics added.)

Hyundai contends the "plain words" of the delegation clause demonstrated clear and unmistakable evidence "that the delegation clause applies to third parties." We disagree. The clause provided: "Any claim or dispute . . . between you and us . . . which arises out of or relates to . . . any resulting transaction or relationship (*including any such relationship with third parties who do not sign this contract*) shall, at your or our election, be resolved by" arbitration. (Italics added.)

The reference to "third parties who do not sign this contract" explains the types of claims that can be compelled to arbitration. That language does not indicate Kermani's agreement that an arbitrator would decide arbitrability disputes with Hyundai. The plain language specified an arbitrator should decide arbitrability disputes only between Kermani and the Dealer.

Hyundai also relies on the United States Supreme Court's decision in *Henry Schein, Inc. v. Archer and White Sales, Inc.* (2019) 139 S.Ct. 524 (*Henry Schein*) to support its contention that the delegation clause required

11

an arbitrator, not the court, to decide arbitrability questions.  Hyundai asserts the *Henry Shein* court held, "courts do not have the power to adjudicate arbitrability in cases involving contracts with delegation clauses." *Henry Schein*, however, did not create a new, general rule.  The court reiterated the above-mentioned rule, "[C]ourts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" (*Henry Schein, supra*, 139 S.Ct. at p. 531.)

Hyundai attempts to undermine the persuasiveness of *Kramer* by noting, "*Kramer* was decided before *Henry Schein*."  We find no merit to Hyundai's assertion because *Henry Schein* recognized the appropriate rule is the one *Kramer* applied.  We also note the *Henry Schein* court did not decide the issue of whether the parties had agreed to delegate arbitrability questions to an arbitrator.  The court stated it "express[ed] no view about whether the contract at issue in this case in fact delegated the arbitrability question to an arbitrator" and remanded the issue for the appellate court to consider.  (*Henry Schein, supra*, 139 S.Ct. at p. 531.)

We conclude the court had jurisdiction to determine whether Hyundai, as a nonsignatory, had standing to enforce the arbitration provision.


D. *Standing to Enforce the Arbitration Provision*

As discussed below, we agree with the trial court's ruling that, based on the plain language of the contract, Hyundai does not have standing to enforce the contract's arbitration provision.  We also conclude Hyundai may not

enforce the arbitration clause under theories of equitable estoppel or third-party beneficiary.[2]

### 1. *Governing Principles*

"Under certain circumstances, a nonsignatory to an arbitration agreement may seek to enforce [the agreement] against a signatory. Whether such enforcement is permissible is a question of state law." (*Ford Motor Warranty Cases* (2023) 89 Cal.App.5th 1324, 1332 (*Ford Warranty*), review granted July 19, 2023, No. S279969; see also *Kramer, supra,* 705 F.3d at p. 1128; *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614, fn. 7.) A nonsignatory bears the burden of establishing that it should be treated as a party to the arbitration agreement. (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 15.)

"'Although the FAA preempts any state law that stands as an obstacle to its objective of enforcing arbitration agreements according to their terms, . . . we apply general California contract law to determine whether the parties formed a valid agreement to arbitrate their dispute.' [Citations.]" (*Ford Warranty, supra,* 89 Cal.App.5th at p. 1332.) "General contract law principles include that "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.'" [Citation.] Furthermore, "'[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'" (*Franco v. Greystone Ridge Condominium* (2019) 39 Cal.App.5th 221, 227.)" (*Ibid.*)

---

[2]   Because we reach this conclusion, we need not address Kermani's independent arguments for affirming the trial court's order.

## 2. *The Arbitration Provision's Plain Language*

Hyundai urges the plain language of the arbitration provision permits it to enforce the provision against Kermani.

Hyundai emphasizes the following  italicized language from the arbitration provision to support its argument: "Any claim or dispute . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to [Kermani's] purchase or condition of this vehicle, this contract or any resulting transaction or relationship *(including any such relationship with third parties who do not sign this contract)* shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."  (Italics added.)[3]

Hyundai contends the reference to "third parties" means Hyundai, as a "third party" can enforce the provision.  Hyundai relies on the court's interpretation of the "third party" language in the identical arbitration provision at issue in *Felisilda v. FCA US LLC* (2020) 53 Cal.App.5th 486, 498 (*Felisilda*).  In that case, the arbitration provision also appeared in a dealer's sale contract with car purchasers.  The court construed the same italicized language referenced above as providing a basis to compel plaintiffs' claims against the car manufacturer to arbitration.

In *Ford Warranty,* our colleagues in Division Eight disagreed with *Felisilda's* interpretation of the same "third party" language contained in the same arbitration provision.  The language is identical to the arbitration provision here.  It also involved a nonsignatory car manufacturer's attempt to compel the signatory purchasers' claims to arbitration.  (*Id.* at pp. 1332–

---

[3]     As discussed, we conclude Hyundai failed to properly authenticate the Sale Contract.  However, for purposes of analyzing the issues on appeal, we cite the provisions of the Sale Contract Hyundai filed with its motion.

14

1333.)  The *Ford Warranty* court construed the reference to "third parties,"
not "as consent by the purchaser to arbitrate claims with third party
nonsignatories.  Rather, . . . as a further delineation of the *subject matter* of
claims the purchasers and dealers agreed to arbitrate.  They agreed to
arbitrate disputes 'between' *themselves*—"'you and us'"—arising out of or
relating to "'relationship[s],' including 'relationship[s] with third parties who
[did] not sign th[e] [sale] contract[s],'" resulting from the "'purchase, or
condition of th[e] vehicle, [or] th[e] [sale] contract.'"" (*Id*. at pp. 1334–1335.)

The *Ford Warranty* court recognized that car purchasers, such as
Kermani, "can elect to buy insurance, theft protection, extended warranties
and the like from third parties, and they can finance their transactions with
those third parties under the sale contracts.  The 'third party' language in the
arbitration clause means that if a purchaser asserts a claim against the
dealer (or its employees, agents, successors or assigns) that relates to one of
these third party transactions, the dealer can elect to arbitrate that claim.  It
says nothing of binding the purchaser to arbitrate with the universe of
unnamed third parties." (*Ford Warranty, supra*, 89 Cal.App.5th at p. 1335.)
After briefing was completed in Hyundai's appeal, three appellate panels
published opinions agreeing with *Ford Warranty's* interpretation of the "third
party" language and rejecting *Felisilda's*.  (See *Montemayor v. Ford Motor Co.*
(2023) 92 Cal.App.5th 958, 968–974 (*Montemayor*)*; Kielar v. Superior Court*
(Aug. 16, 2023, C096773) __ Cal.App.5th __ (*Kielar*)*; Yeh v. Superior Court*
(Sept. 6, 2023, A166537) __ Cal.App.5th __ (*Yeh*).)

We agree with *Ford Warranty's* analysis and that of its progeny.  We
conclude the Sale Contract does not contain any language expressly
authorizing Hyundai to enforce the arbitration provision.

15

### 3. *Equitable Estoppel*

Hyundai also contends Kermani is precluded from challenging Hyundai's standing to enforce the Sale Contract's arbitration provision under the equitable estoppel doctrine. Hyundai argues Kermani's claims are founded in, and intertwined with, the [Sale Contract]. We are not persuaded by this argument.

### a. *Governing Principles*

A nonsignatory may compel arbitration under an equitable estoppel theory "when the claims against the nonsignatory are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause." (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 219 (*Goldman*), italics omitted.) "'"[T]he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the sine qua non of an appropriate situation for applying equitable estoppel.'" [Citations.] '[E]ven if a plaintiff's claims "touch matters" relating to the arbitration agreement, "the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action."'" (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 306, italics omitted.)

The purpose of the equitable estoppel doctrine is "to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman, supra,* 173 Cal.App.4th at p. 221.) "'By relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively, a plaintiff may be equitably estopped from repudiating the arbitration clause

16

contained in that agreement.' [Citations.]" (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1237.)

### b. *Causes of Action*

We now refer to the allegations in Kermani's complaint to determine whether the equitable estoppel doctrine applies here. (*Goldman, supra,* 173 Cal.App.4th at pp. 229–230.)

Kermani's first and second causes of action are based on Hyundai's alleged violations of state lemon law (i.e., the Song-Beverly Act). Kermani alleged Hyundai breached its express and implied warranties to Kermani and the putative class members. Kermani attached the express written warranty from Hyundai to the complaint as the basis for the breach of warranty obligations. Kermani did not allege the Sale Contract provided any basis for the warranty causes of action, nor did he allege violation of any of the Sale Contract's terms.

The Sale Contract does not include warranties or promises regarding the car's quality or condition. Rather, the Sale Contract expressly disclaimed any "express or implied" warranties and stated "there will be no implied warranties of merchantability or of fitness for a particular purpose." The disclaimer stated "[t]his provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide." The Sale Contract's "substantive terms . . . relate to sale and financing and nothing more." (*Ford Warranty, supra,* 89 Cal.App.5th at p. 1335 [interpreting an identical sale contract between a selling dealer and car purchaser].)

Hyundai asserts Kermani's warranty claims are "intimately founded in and intertwined with" the Sale Contract because California law treats warranties as "obligations that are *part of* the underlying sales contract." We

17

reject that assertion. "California law does not treat manufacturer warranties imposed outside the four corners of a retail sale contract as part of the sale contract." (*Ford Warranty, supra*, 89 Cal.App.5th at p. 1335; *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 60–61 [recognizing a distinction between warranty obligations a seller owes a buyer under a contract and the warranty "that arise[ ] independently of a contract of sale between the parties"]; see also *Ngo v. BMW of North America LLC* (9th Cir. 2022) 23 F.4th 942, 949 (*Ngo*) [manufacturer's express and implied warranties "arise 'independently of a contract of sale'"].)[4] Kermani's third cause of action for unfair business practices under the Unfair Competition Law is based upon Hyundai's alleged "decision to knowingly sell defective Class Vehicles, with no remedy or fix available for the known defect." Like the lemon law causes of action, the unfair business practices claim focused on Hyundai's alleged bad acts and does not reference, or rely upon, any term of the Sale Contract.

Kermani's fourth and final cause of action for breach of the covenant of good faith and fair dealing is based on Hyundai's alleged failure to "inform [Kermani] and potential Class Members of the battery system defect affecting the Class Vehicles and failing to properly repair this defect." This claim, like the others, also does not rely on any provision of the Sale Contract. As discussed, the Sale contract disclaimed warranties and did not make any promises or representations relating to the quality of the car, including its battery system.

---

[4] Our Supreme Court granted review in *Ford Warranty* to decide whether manufacturers' warranties constitute obligations that arise from the sale contract, permitting manufacturers to enforce an arbitration agreement under the equitable estoppel doctrine.

18

Hyundai asserts that Kermani's cause of action for breach of the implied covenant of good faith and fair dealing is "intimately founded in and intertwined with the underlying contract obligations" of the Sale Contract. We disagree.

Hyundai also argues that Kermani's causes of action are intertwined with the Sale Contract because Kermani seeks "contract remedies" such as revocation. We do not agree. "[T]he correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the Purchase Agreement . . . not whether the court must look to the Purchase Agreement to ascertain the requested relief. The emphasis of the case law is unmistakably on the claim itself, not the relief." (*Kramer*, *supra,* 705 F.3d at pp. 1131–1132.)[5]

Because none of Kermani's claims "are founded in and inextricably bound up with the obligations imposed by the agreement containing the arbitration clause," we conclude Hyundai cannot enforce the arbitration provision under the equitable estoppel doctrine. (*Goldman, supra,* 173 Cal.App.4th at p. 219, italics omitted.)

### 4. *Third-Party Beneficiary*

Hyundai argues it may enforce the arbitration provision as a third-party beneficiary of the Sale Contract. (See Civ. Code, § 1559 ["A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it"].) We disagree.

---

[5] We note Hyundai makes additional arguments for the first time in its reply brief to support its contention that the equitable estoppel doctrine applies here. We do not consider these arguments. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345–1346, fn. 6 ["[A]n appellant's failure to raise an issue in its opening brief [forfeits] it on appeal"].) .

In *Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*), our Supreme Court delineated a multifactor test to determine whether a litigant is a third-party beneficiary to a contract. The reviewing court should "carefully examine[ ] the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Ibid.*)

The express provisions of the Sale Contract do not evidence that Kermani and the Dealer intended to benefit Hyundai. The language specifies who may invoke its terms. The initial reference to arbitration in the Sale Contract stated: "you [Kermani] or we [Dealer] may elect to resolve any dispute by neutral, binding arbitration and not by a court action." The arbitration provision used nearly identical language ("EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION") and reiterated that claims and disputes "shall, at *your* or *our* election, be resolved by neutral, binding arbitration and not by a court action." (Italics added.)

Allowing Hyundai to enforce the arbitration provision as a third-party beneficiary would not be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties." (*Goonewardene, supra*, 6 Cal.5th at p. 830.) The Sale Contract provided in three separate

20

paragraphs that the right to enforce the arbitration provision was limited to Kermani and the Dealer.

The reference to "'third parties who do not sign this contract'" does not give Hyundai standing to compel arbitration. As discussed above, this reference concerns *what* may be arbitrated, not *who* may arbitrate. Read in context, this language ensures the buyer or seller cannot circumvent the provision by joining a nonsignatory as a party to the claim or dispute. (See *Ford Warranty, supra,* 89 Cal.App.5th at p. 1339, citing *Ngo, supra,* 23 F.4th at p. 948 ["Although the arbitration clause may have extended to claims regarding the purchase of the vehicle, it does not follow that additional *parties* can enforce the arbitration clause"].) "The parties' choice of the *subject* of the disputes they agree to arbitrate does not evince an intention to benefit nonparties so as to affect *who* is entitled to compel arbitration." (*Ford Warranty, supra,* 89 Cal.App.5th at p. 1339.)

Hyundai contends it was an intended beneficiary of the Sale Contract because of its alleged "symbiotic business relationship" with the Dealer. Hyundai's contention is unavailing. Whether a nonsignatory had a "close relationship" with a signatory is not relevant to a third-party beneficiary analysis. (See *Goonewardene, supra,* 6 Cal.5th at p. 830.)

### 5. *Agency*

For the first time on appeal, Hyundai contends that it can enforce the arbitration agreement because there is an agency relationship between Hyundai and the Dealer. Hyundai asserts it can enforce the arbitration agreement because the agreement provided, "Any claim or dispute…*between you and us or* our employees, *agents,* successors or assigns . . . shall, at your

or our election, be resolved by neutral, binding arbitration and not by a court action."

Hyundai forfeited this argument by failing to raise it in the lower court proceedings. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591 ["[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court'"].)

Regardless, Hyundai's contention fails on the merits. First, the plain language of the arbitration provision only relates to claims between Kermani and Hyundai's *agents*. Hyundai purports to be Dealer's *principal*, not its agent. Second, the provision relates to the types of claims that could be arbitrated, not *who* may enforce the provision. The provision specifies disputes will be resolved by binding arbitration "at *your* or *our* election." (Italics added.) Third, Hyundai has not pointed to any allegations in Kermani's complaint or provided evidence from the trial court proceedings to establish such a relationship between Kermani and Hyundai. (*Hernandez v. Meridian Management Services, LLC* (2023) 87 Cal.App.5th 1214, 1220, 1222 [affirming order denying motion to compel arbitration where nonsignatory defendants contended they could enforce an arbitration provision because they were agents of the signatories, but failed to offer any evidence they had authority to act on behalf of the signatory to the arbitration provision].)

//

//

//

//

22

## DISPOSITION

The order denying Hyundai's motion to compel arbitration is affirmed. Kermani is entitled to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.